## MARY UNKOVICH AND OTHERS v. INTER STATE IRON COMPANY.[1]

January 14, 1927.

No. 25,688.

**Finding sustained that employe's injury was proximate cause of his death and award was warranted.**

Evidence considered and *held* sufficient to warrant a finding that decedent's injury was the proximate cause of his death and warranted the award made.

Workmen's Compensation Acts—C. J. p. 122 n. 40.

---

See note in 20 A. L. R. 13.

Certiorari to review an order of the Industrial Commission awarding compensation in a proceeding under the Workmen's Compensation Act. Affirmed.

*Washburn, Bailey & Mitchell,* for relator.
*Gannon, Strizich & Farnand,* for respondents.

QUINN, J.

Proceedings under the Workmen's Compensation Act, G. S. 1923, c. 23A. The referee took the evidence, made findings and an award

[1]Reported in 211 N. W. 683.

to the dependents of $7,500 subject to the limitations of the law, and on appeal the Industrial Commission adopted the findings and approved the award. The matter comes to this court for review by certiorari.

Tony Unkovich, now deceased, was a strong, healthy man, 40 years of age, with a family consisting of his wife and seven minor children, dependents. He had lived in the northern part of this state with his family for more than 20 years and was a miner by occupation.

During the week ending March 20, 1925, Unkovich was in the employ of the relator in one of its mines in the capacity of a miner at a weekly wage of $42. During that week, the exact day not appearing, it became necessary for Unkovich, in the course of his employment, with one Onka, a coemploye, to carry a large wooden post, 12 feet long and about 11 inches in diameter, from one point in the mine to another. In so doing Unkovich took the front end of the post under his right arm, Onka taking the back end. While so carrying the post, Unkovich stepped onto a wet spot, slipped and fell, the post striking his right leg above the ankle, causing a contusion and discoloration. This occurred about 2 o'clock in the afternoon. He worked the balance of that day with some difficulty, returned the next morning but was unable to complete that day's work. Thereafter septicemia developed. There is testimony to the effect that there were red and blue streaks on his leg near the place where the post struck it. Swelling commenced at that point and continued up and down his leg. He gradually grew worse until August 23, 1925, when he died.

The contention on behalf of relator is that, if there was an injury, it was not of sufficient severity to cause the infection and the resulting death; that the blow did not cause an abrasion of the skin; that infection therefore could not result from the blow, and that some intervening agency set the septicemia in motion which steadily progressed to the fatal result.

We have considered the testimony of the several medical witnesses, as it appears in the record in connection with that of the other wit-

nesses, which leads to the conclusion that the triers of fact were justified in finding that the contusion on decedent's leg, caused by the blow from the post, was the proximate cause of his death. Let the human body, or any part of it, become weakened and lose its power of resistance, such for instance as the result of a blow causing a contusion, the injured part immediately becomes the center of attack with the result that such weakened part yields to such attack resulting perhaps in serious consequences. In such event it is apparent that the contusion is the proximate and effective cause of the resulting injury. The liability to infection, which is ever present in the human body in a greater or lesser degree, which a healthy body repels, cannot be said to be an effective or proximate cause. The injured or weakened portion loses its vitality and power of resistance and thus becomes the object of successful attack. The foregoing seems to apply to the situation before us.

The injury occurred during the week ending March 20th. Local infection in the lower part of the leg appeared and was followed by a general infection of the whole system which resulted in the patient's death. Dr. C. C. Smith, relator's physician, testified that he had known decedent for six or seven years; that he had attended various members of his family from time to time; that he attended decedent professionally on March 19, 1925; that the patient told him at that time that on March 12th a piece of timber hit the back of his leg; that there was a diffuse swelling in the calf of the leg; that there was at that time no discoloration or abrasion of the skin, no temperature and no evidence of infection, just a simple contusion; that in the course of the first week the swelling went down and the patient improved considerably; that he saw him every other day; that on the 27th of March the leg became much worse; that the whole leg became edematous; that the patient developed a fever and complained of pain and tenderness in his leg; that he advised the patient to use crutches and hot applications; that he examined the patient carefully otherwise and found him to be normal in every way; that his heart function seemed to be normal and that he did not complain about his kidneys.

The doctor also testified that in his opinion it is not likely that the infection was due to the injury, if there was one; that it is not likely that the condition could have been brought about by an injury which did not show some evidence on the skin; that, in the early part of April, he advised the patient to go and see Dr. Shaw as there was a question as to the location of the trouble; that there was a possibility of it being in the bone and that he wished to have the bone X-rayed.

The other medical testimony was along the line of that given by Dr. Smith, attributing the cause of death to septicemia. Dr. Reynolds heard the testimony of Miss Unkovich, read the autopsy report and considered the testimony of Dr. Smith in connection with the matter as reviewed by counsel in his hypothetical question and testified that there were several things, any one of which might have caused the patient's death, but probably septicemia was the immediate cause; that from the history of the case septicemia probably came from the veins immediately underlying the site of the injury in the leg; that the man was apparently well, had no trouble with either leg and sustained an injury to his right leg, followed by considerable swelling, and about two weeks after the injury it began to swell again and the discoloration was there and it gradually extended up the leg, which probably meant that there was an inflammation around the veins starting at the site of the injury and very gradually the inflamed area extended up the leg; that the fact that this became progressively worse until he had generalized infection all over the body with abscesses and thrombi all over his body from which he finally died; that such a condition would form a site where there would be lower resistance, and that any infection that he might have, the bacteria from that infection would have a better chance of growing at that particular site than at anywhere else in the body, which would result in infection at that point, in this case probably an inflammation of the veins; that with an injury that would furnish an area in which the resistance of the body was considerably lowered and its ability to fight against these bacteria and successfully cope with them as the rest of the body was

doing was lowered, and therefore they got a chance to grow, and we know it is perfectly true if these bacteria get a chance to grow and multiply and find a ready field that they gradually increase their virulence and such area would furnish a site at which this condition would take place until finally the bacteria was strong enough to attack other healthy tissues; that in this case I cannot say where the original infection came from, but I think it was from this point.

Mrs. Unkovich testified that she saw the injury on her husband's right leg on the day following the accident; that the leg was swollen and that it was red and blue; that the blue spots went right up to the body; that two or three of the veins on the inside of the leg were black and one was red; that the patient complained of pain in his knee; that he got worse and worse every day; that she called Dr. Smith; that later her husband went to Hibbing and consulted with Dr. Rood and in July went to St. Mary's hospital in Duluth, but never came back.

Margaret Unkovich, the 17 year old daughter, testified that on the day her father was injured he came into the house and was limping; that he went to work the next day; that he came home and was limping more and said it hurt him awfully hard, and he went to bed; that she called Dr. Smith but he was not at home, but that he came about 6 or 7 o'clock that evening; that she saw her father's leg and that there were red and blue marks on it, right down on the fleshy part of his leg; that the swelling reduced.

Upon what day of the week the accident occurred is unimportant. The week in which it occurred is fixed definitely. Dr. Smith was called and saw the injured man very shortly after the accident. It is undisputed that at that time the leg was considerably swollen. The testimony is in conflict as to whether there was any discoloration. It is undisputed that during the following week the patient remained in bed and the swelling subsided but that during the following week there was a decided turn for the worse and from that time on the patient lost ground until the time of his death, which occurred in August following. Quite an array of physicians testified at the hearing to the effect that in their opinion septicemia was

the direct cause of death but what caused the septicemia is not so clear. However, it clearly appears that at the time of the patient's turn for the worse the trouble centered in and about the point of injury and gradually extended over the entire body.

We are satisfied that the testimony of Dr. Smith and Dr. Reynolds, when considered with the other evidence in the case, clearly warranted the finding that the injury was the proximate cause of the final result. There were a great many objections and exceptions in the record but we deem it unnecessary to here traverse the same. Our conclusion is that the findings of the referee, as affirmed by the Industrial Commission, under the rules which are established by the decisions of this state, a citing of which is here unnecessary, must stand. The order of the commission awarding compensation to the dependents herein is affirmed. Attorney's fees in this court are fixed and allowed at the sum of $200.

Affirmed.